**Sixto RODRIGUEZ, Plaintiff,**

**v.**

**Emanuel FRIEDMAN, Deputy Commissioner, Second Compensation District, Bureau of Employees' Compensation, United States Department of Labor, Michigan Mutual Liability Company, Insurance Carrier, and American Stevedores, Inc., Employer, Defendants.**

**No. 67-C-566.**

United States District Court,
E. D. New York.

Nov. 3, 1969.

Israel, Adler, Ronca & Gucciardo, New York City, for plaintiff.

Vincent T. McCarthy, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., Louis E. Greco, Admiralty & Shipping Section, Dept. of Justice, New York City, for defendant Emanuel Friedman.

Joseph J. Kelly, New York City, for defendants Michigan Mutual Liability Co. and American Stevedores, Inc.

ZAVATT, District Judge.

### MEMORANDUM

This appeal from a compensation order and award of the Deputy Commis-sioner, made under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq., (the Act), arises in the context of summary judgment motions by plaintiff and all defendants, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Jurisdiction to review the order is vested in this court by virtue of 33 U.S.C. § 921(b).

The essential facts, which are not in dispute, are (1) that the plaintiff was a longshoreman in the employ of the defendant, American Stevedores, Inc. (employer), on March 24, 1964; (2) that, as such, he was aboard the M/S PRESIDENT ROXAS while it was in navigable waters and moored to Pier 12, Brooklyn Army Base, Brooklyn, New York during the unloading operation; (3) that, while acting within the scope of his employment as a hold man, he fell from a carton of cargo (on which he was standing); (4) that, by reason thereof, he sustained injuries to his left wrist, left knee and lower back. (Plaintiff claims that these injuries have rendered him totally disabled from the date of the accident to the present—a period of approximately five and one-half (5½) years); (5) that the defendant Michigan Mutual Liability Company (Michigan Mutual) was the insurer of the employer.

Following the filing of a claim for compensation under the Act and hearings before the Deputy Commissioner on January 18 and March 9, 1967 pursuant to section 919 of the Act, the Deputy Commissioner made an award in Case No. 966–5577, dated May 15, 1967, for the sum of $3,718.36 based upon his findings (1) that the claimant was totally disabled from March 25, 1964 to November 19, 1964; (2) that he was partially disabled from November 19, 1964 to September 8, 1965; (3) that all disability ended on September 8, 1965. Based upon these findings, the Deputy Commissioner made an award for (1) 34½ weeks of total disability at $54.35 per week ($1855.66); (2) 42 weeks of partial disability at $44.35 per week ($1862.70) pursuant to the schedules set

forth in section 908 of the Act.[1] The compensation order credited the employer and insurer with $2,757.57, previously paid to the claimant, and directed payment of the balance of $960.79 to the claimant, subject to the lien of claimant's attorneys in the sum of $150.

For the reasons hereinafter stated, the plaintiff's motion for summary judgment is denied; the motions of the defendants for summary judgment are granted.

### Plaintiff's contentions

The plaintiff contends:

(1) that the record does not substantiate the finding that his disability ended on September 8, 1965;

(2) that the record does not substantiate the finding that he was only partially disabled during the period November 19, 1964 to September 8, 1965;

(3) that, at the first hearing, the defendants did not claim only partial disability for the period November 19, 1964 to September 8, 1965 and that, therefore, it was error for the Deputy Commissioner to find only partial disability for that period;

(4) that certain documentary evidence was improperly admitted at the hearing.

### The scope of the court's review

■ Under the Act, the scope of the court's review is narrow. A compensation order may be suspended or set aside only if it is "not in accordance with law." 33 U.S.C. § 921(b). "[T]he findings are to be accepted, unless they are unsupported by substantial evidence on the record considered as a whole." O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951). Accord, Banks v. Chicago Grain Trimmers' Association, 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968), rehearing denied, 391 U.S. 929, 88 S.Ct. 1800, 20 L.Ed.2d 671 (1968). "[T]he inferences drawn by the Deputy Commissioner are to be accepted unless they are irrational or 'unsupported by substantial evidence on the record * * * as a whole'." O'Keeffe v. Smith, Henchman and Grylls Assocs., Inc., 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965), See Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).

### The Expert Evidence

In support of his claim of total disability, the plaintiff offered the testimony and medical reports of a Dr. Rosen, an orthopedic surgeon. Dr. Rosen testified to his opinion that the plaintiff was totally disabled from the date of the accident to the date of his testimony, i.e., January 18, 1967. (Transcript pp. 44–45). It is noted, however, that, in all three of his reports received in evidence, he stated that the patient received no treatment or therapy at any time over the course of his three examinations, i. e., September 17, 1964 to January 17, 1967. (Transcript pp. 57–62).

The defendants produced two doctors at the hearing—Dr. Kapland, an orthopedic and traumatic surgeon; Dr. Masella, a general surgeon. In addition there were received in evidence two reports of Dr. Michele (an impartial specialist), dated respectively May 25, 1965 and November 23, 1964. (Transcript pp. 63–65). Dr. Kapland testified that there was "no orthopedic reason" why the plaintiff could not return to his regular work, based upon his examination of the plaintiff on September 8, 1965. (Transcript pp. 73 et seq.). The reports of Dr. Michele were to the effect that the plaintiff had a partial disability on November 18, 1964 and May 25, 1965.

Dr. Masella testified that he was the attending physician who treated the plaintiff at Hospital of the Holy Family the day after the accident and treated him thereafter in his office until August

---

1. It was stipulated at the hearing before the Deputy Commissioner that claimant's average weekly wage was $81.52. (Transcript p. 6).

17, 1964, when he discharged the plaintiff; that on that date "it was my opinion that he made a sufficiently good recovery so that he could return to work." He testified, further, that, in his opinion, the plaintiff could have returned to work on May 11, 1964 (Transcript pp. 100–101). The court notes that the plaintiff omitted from his brief, submitted to the court, any reference to the testimony of Dr. Masella.

The plaintiff misconceives the meaning of the substantial evidence test. It does not mean that the court should consider only that evidence in the record most favorable to the plaintiff. The test is "substantial evidence on the record as a whole." Plaintiff's "key" case, Friend v. Britton, 95 U.S.App.D.C. 139, 220 F.2d 820 (1955) is not relevant in this case.

Having examined the entire transcript, the court finds that the record as a whole contains substantial evidence to support the findings and award of the Deputy Commissioner.

*Plaintiff's claim of total disability from November 19, 1964 to September 8, 1965*

Plaintiff contends that, even assuming a partial disability during this period, it was tantamount to a practical total disability.

Section 908(e) of the Act provides that, in determining the amount of an award in cases of partial disability, the Commissioner shall compute two-thirds of the claimant's average weekly wage before the accident minus his wage-earning capacity after the accident. Section 908(h) provides that, where there are no such actual post-accident earnings or such earnings are not an accurate representation of the said earning capacity, the Commissioner "may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of his physical impairment, his usual employment and any other factors * * * which may affect his capacity to earn wages in his disa-

bled condition, including the effect of disability as it may naturally extend into the future."

Plaintiff challenges specifically the Commissioner's determination that $15 was his weekly earning capacity during the period of his partial disability, because the plaintiff had no actual earnings during this period. Plaintiff claims that the Commissioner was mandated by statute to consider those "other factors" and that, had he done so, the plaintiff's earning capacity would be zero.

The record shows that the plaintiff was 53 years of age on November 18, 1964; that he was born in Puerto Rico; that he has the equivalent of a fourth grade grammar school education; that, although he has lived in the United States since 1944, he speaks only Spanish and has spent his entire working life as a longshoreman. The plaintiff seeks to justify the fact that he remained idle for four years by his argument that, even during the captioned period, a partial disability was tantamount to a total disability; that, since he was not physically fit for hold duty, he was as helpless as a fish out of water. (Plaintiff's brief p. 4). In determining that plaintiff's wage-earning capacity during this period was $15 per week, the Commissioner did so "having due regard to the nature and extent of the injury, as well as the employee's age, his educational limitations, his language difficulties and his individual history * * *" (Compensation Award and Order p. 2).

The Commissioner made an exceedingly liberal finding *i.e.*, that plaintiff's earning capacity was only $15 per week after the injury. It is more probable that he relied on these "other factors," rather than that he ignored them. The Commissioner could have believed Dr. Masella's findings (that plaintiff was physically fit to return to work in August, 1964) and awarded him no disability compensation whatever during the captioned period.

I find, therefore, that the determination of the Commissioner as to the

captioned period is supported by substantial evidence on the record as a whole. I make a similar finding as to the Commissioner's determination that plaintiff suffered no disability after September 8, 1965.

*Plaintiff's contention that defendants waived their right to claim partial disability for the period March 24, 1964—September 8, 1965*

■ Plaintiff argues that defendants waived their right to claim partial disability for the captioned period because they did not raise the issue of partial disability at the "first hearing." To bolster this argument, plaintiff relies solely on sections 912(a) (d) (2) and 913(a) (b). Section 912(d) (2) provides that, if claimant has failed to give timely notice of his injury pursuant to section 912(a), such failure will not bar his claim if there was no objection by the defendant to such failure at the first hearing. § 913(b) is to the same effect, but is concerned with the one year statute of limitations for the filing of the claim. Both these provisions are designed to mitigate the harshness of its possible operation against a claimant; neither of these sections puts any obligation on defendants. It is strange statutory interpretation indeed of a statute designed to aid a negligent claimant that would deprive a defendant of his defenses to a claim. This plaintiff did not file a timely notice of claim pursuant to § 912, but was saved by the provision of § 912(d) (1), which he now seeks to assert offensively.

*The admission of certain evidence*

■ Finally, plaintiff objects to the admission into evidence by the Commissioner of Exhibit B. Plaintiff does not raise the issue in his complaint. He objected to its admission at the hearing, but did not renew his objection until he submitted his brief in this case and argued in support of his motion for summary judgment. Exhibit B is a file of International Terminal Operating Co., Inc. (No. 6618) concerning a prior claim by this plaintiff against that company. The report was relevant because it concerned a prior back injury in 1960. Plaintiff objects to the admission of this evidence because it contains several reports of private investigators who followed plaintiff during the pendency of the prior action and characterized him, in so many words, as being lazy and shiftless. Plaintiff feels that this hearsay evidence was damaging and that the Commissioner should have used Exhibit C (the file of the United States Department of Labor, Bureau of Employees Compensation) instead. The latter file was essentially the same as Exhibit B but did not include these uncomplimentary characterizations.

Leaving aside the question of whether this record could have been properly admitted as a business record, section 923(a) of the Act provides that:

"In * * * conducting a hearing the deputy commissioner shall not be bound by common law or statutory rules of evidence * * *."

See also 5 U.S.C. § 556(d) (Administrative Procedure Act). Both statutes manifest exceedingly liberal policies regarding the admission of evidence at agency hearings and both indicate that hearsay evidence may be admitted. Kwasizur v. Cardillo, 175 F.2d 235 (3rd Cir. 1949) cited by plaintiff to support his argument is factually different. In addition, that case never reached the specific question of whether the evidence in question was admissible.

I have considered and rejected all of plaintiff's claims. Accordingly, plaintiff's motion for summary judgment is denied; the motions of the defendants for summary judgment are granted.

This is an order. The Clerk will enter judgment accordingly.